# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**TIMOTHY HERZOG,**
1017 West Koch Street
Bozeman, Montana 59715,

        Plaintiff,

    vs.

**LOYOLA COLLEGE
IN MARYLAND, INC.,**
4501 North Charles Street
Baltimore, Maryland 21210,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:

FILED          ENTERED
LODGED          RECEIVED

SEP 1 2 2007

RDB 07 CV 2416

DEPUT

## COMPLAINT
### FOR
### INJUNCTIVE RELIEF,
### SPECIFIC PERFORMANCE, AND DAMAGES
#### (With Jury Demand)

**Action Filed Under
Americans with Disabilities Act
of 1990, §504 of Rehabilitation
Act of 1973, and Principles of General Contract Law**

1.   This is an action for injunctive relief, specific performance, and damages, brought under the Americans with Disabilities Act of 1990, §504 of the Rehabilitation Act of 1973, and also under applicable principles of general contract law.

### Jurisdiction

2.   The Court has subject matter jurisdiction of the case under 28 U.S.C. §§1331 and 1343, as a matter arising under federal civil rights laws, and also under 28 U.S.C. §1332, as a diversity matter between citizens of different states involving a controversy exceeding the jurisdictional minimum.

Maxwell & Barke
51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-1-

**Venue**

3.   Venue is proper in the District of Maryland, as many of the material events and omissions giving rise to the claims in question are alleged to have occurred in Baltimore, Maryland.

**Parties**

4.   Plaintiff, Timothy Herzog ("Herzog"), is an adult male individual,  presently residing in Bozeman, Montana.

5.   Defendant, Loyola College in Maryland, Inc. (the "College"), is a Baltimore-based institution of higher learning, incorporated under the laws of Maryland.

**Background of Parties' Relationship**

6.   Herzog, before his sudden dismissal from the program in March of 2007, had been a candidate at the College for a doctorate in clinical psychology (a Psy.D.).

7.   Having, since the fall of 2002, attended classes at the College's North Charles Street campus in Baltimore, by the time of his dismissal Herzog had been awarded a master's degree (M.S., in Clinical Psychology) by the College in January of 2004, and had also earned post-secondary degrees at Boston University (an Ed.M., in Counseling Psychology, granted in 2001), and at Saint Mary's College of Maryland (a B.A., in Psychology and Economics conferred in 1998).

8.   Herzog relocated to Montana from Maryland, during the summer of 2006, to participate in a pre-doctoral internship at Montana State University ("Montana State"), in conjunction with and as a requirement of his continuing matriculation at the College.



51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-2-

## Herzog's Disability
## <u>Determination by the College</u>

9.   At the time of Herzog's matriculation at the College, in connection with the process

the College employed to determine the *bone fides* of any disability claimed by a student, the

College published and distributed to students, including Herzog, a written statement entitled

"Loyola's Policy Towards Students With Disabilities", which expressly promised, in part:

> It is the policy and practice of Loyola College to comply with the
> Americans with Disabilities Act [of 1990], Section 504 of the
> Rehabilitation Act of 1973, and state and local requirements
> regarding students with disabilities.
>
> Section 504 of the Rehabilitation Act of 1973 and the Americans
> with Disabilities Act of 1990 prohibit discrimination against
> individuals with disabilities. According to these laws, no
> otherwise qualified individual with a disability shall, solely by
> reason of his/her disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under
> any program or activity....

10.   In August of 2003, a College disability support services committee of three, in

response to Herzog's application,  determined that Herzog had a "disability", which they

identified as "AD/HD predominantly inattentive type DSM IV 314.00", and which they further

found impaired a "major life activity" of Herzog, namely, "learning/test taking".

11.   In accordance with the College's disability determination as set forth in the

preceding paragraph, it has formally recognized and does not dispute that, during the time of

his matriculation at the College, Herzog was a student with a disability within the reach and

intendment of "the Americans with Disabilities Act [of 1990], Section 504 of the

Rehabilitation Act of 1973, and state and local requirements regarding students with

disabilities", and, as such, was and is entitled to the protections and benefits of the foregoing

laws.



51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-3-

**Herzog's Standing at the College**
**Prior to his Montana State Internship**

12.  On November 29, 2005, after more than three years of study at the College, in a letter of recommendation to Montana State concerning Herzog's then prospective participation in their pre-doctoral internship program, Dr. Jeffrey Lating, Director of Clinical Training at the College, summarized Herzog's accomplishments at the College as follows:

> I am writing to recommend most highly Mr. Timothy Herzog ...
> *** ... he clearly possesses the requisite clinical skills predictive
> of internship success. Tim has performed well in a very rigorous
> program of study. *** Overall, Tim has been an asset to our
> doctoral program, and will do exceptionally well during his
> internship year. I give Tim my highest recommendation.

A complete copy of Dr. Lating's November 29th letter is attached hereto as Exhibit "A".

13.  Dr. Lating's November 29th letter to Montana State was accompanied by his responses on an Association of Psychology Postdoctoral and Internship Center questionnaire, where Dr. Lating indicated, in part, as follows:

a.   This applicant has possessed the emotional stability and maturity to handle the challenges of graduate training to this point. Yes

b.   This applicant possesses the theoretical/academic foundation necessary for effective counseling/clinical work. Yes

c.   This applicant possesses the skills necessary for translating theory into integrated practice. Yes

d.   This applicant demonstrates awareness of, and practices according to, the current ethical guidelines for psychologists. Yes

e.   This applicant demonstrates the capacity to participate in supervision constructively and can modify his/her behavior in response to feedback. Yes

f.   Are any complaints currently pending against this student or were any filed in the past and found to be legitimate? No.

Maxwell & Barke
51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

–4–

14.  The representations made by Dr. Lating to Montana State regarding Herzog, as set forth in the two preceding paragraphs, when rendered on or about November 29, 2005, were truthful and made in good faith, while having reasonable access to and familiarity with Herzog and his College student file, including but not limited to Herzog's academic transcripts, as well as oral and written reports and accounts about Herzog from various sources.

### Montana State Internship

15.  During the summer of 2006, after being accepted by Montana State, Herzog relocated to Montana, and then began what was expected to be a two-semester pre-doctoral internship there.

### January 3, 2007 Midway
### Report from Montana State

16.  At the conclusion of Herzog's first semester of his Montana State internship, on January 3, 2007, Dr. Betsy Asserson, Montana State's Assistant Director of Training, wrote to Dr. Lating at the College, to report on Herzog's progress. In her January 3rd letter, after two pages of generally favorable comments, Dr. Asserson reported, in pertinent part:

> There have been significant challenges this semester as well. Tim received feedback from myself and other training committee members that at times he seems defensive in response to feedback and has a strong need for positive feedback. He was able to identify how this relates to underlying adequacy and competency issues. During the semester, he was a teaching assistant for a counseling skills class. It was in this role that he engaged in an ethical violation of the Multiple Relationships standard. He approached a student in the class to develop a further relationship and the student brought it to the attention of the professor given her discomfort with the situation. It was concerning to us as a training committee that Tim indicated he considered gaining consultation before approaching the student, but did not do so. Tim expressed feeling shame and embarrassment as a result and was concerned about how it would affect his evaluations. As a training committee, we developed a



Maxwell & Barke
51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

remediation plan which I included for your information. A larger theme that has been a struggle for Tim is the issue of power in relationships. This has also been an issue for him with his peers. As a result, he will receive an additional weekly one hour of supervision with me next semester to continue addressing ethics, power dynamics in relationships, and his defensiveness. Dr. Cheryl Blank, the training director, reviewed this remediation plan with Tim. He indicated to her that he understood the concerns of the training committee and expressed commitment to remediate in these areas in order to pass the internship. Dr. Blank will be contacting you to further discuss the remediation plan. We would welcome any further thoughts you have regarding our arrangements to address these areas of concern.

During the spring semester, Tim will continue with various activities at CPS. In addition, he will supervise a Master's level counseling student and receive supervision of supervision. He will also continue work on his dissertation and job search. Through the summer, he plans to complete a rotation at the Crow Indian reservation in an outpatient community mental health clinic. We will assess his progress throughout the semester to determine his progress and growth in the above mentioned areas of concern.

A complete copy of Dr. Asserson's January 3rd letter (without enclosures and/or attachments) is attached hereto as Exhibit "B".

**Overreaction of the
College to the January 3, 2007
<u>Midway Report from Montana State</u>**

17. In response to Dr. Asserson's January 3, 2007 midway report to the College, the same Dr. Lating, who only fourteen months earlier had commended Herzog for having "performed well" in the program and earning the College's "highest recommendation", abruptly reversed position, and now concluded that Herzog should immediately be permanently dismissed from the program.



51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

### Herzog's Dismissal from the Program

18.  In a February 13, 2007 letter to Herzog, sent only three months before Herzog's anticipated graduation day, Dr. Lating wrote that the College's Professional Assessment Review Committee had considered what had occurred in Montana in the context of Herzog's "entire training experience at Loyola College" as an exemplar of "repeated patterns of behavior", which required Herzog's immediate dismissal from the program. In this February 13th letter, Dr. Lating wrote, in part:

> .... this incident [at Montana State] was considered in the context of your entire training experience at Loyal College. While we appreciate the remediation steps that the supervisors at Montana State and you have taken to address this and related issues, we remain deeply concerned about the repeated patterns of behavior, including your inability to recognize and react accordingly to power differentials, and your subsequent decisions based upon these bahaviors. Given these serious implications, the [Professional Assessment Review] Committee has recommended dismissal from the Psy.D. program.

A complete copy of Dr. Lating's February 13th letter is attached hereto as Exhibit "C".

19.  One week after Dr. Lating's letter, on February 20, 2007, Dr. Jen Lowry, Chair of the College's Department of Psychology, wrote to Herzog advising that the department faculty had voted to uphold his dismissal from the program, effective February 19, 2007, and Herzog would not be able to continue in his internship program at Montana State. Herzog was also informed in Dr. Lowry's February 20th letter that his dismissal was appealable to a panel of the College's Graduate Academic Standards committee. A complete copy of Dr. Lowry's February 20th letter is attached hereto as Exhibit "D".



Maxwell & Barke

51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-7-

20.  Dr. Lowry followed her February 20th letter to Herzog, with a February 28, 2007 memorandum to the Graduate Academic Standards Committee, detailing, for purposes of appeal, the basis on which the faculty of the Department of Psychology had dismissed Herzog.

21.  In Dr. Lowry's February 28th memorandum –in apparent contradiction to Dr. Lating's earlier November 29, 2005 recommendation to Montana State that Herzog had "performed well", had the College's "highest recommendation", "demonstrates the capacity to participate in supervision constructively and can modify his/her behavior in response to feedback", and, finally, that no complaints are pending or were filed against the student in the past and found to be legitimate– Dr. Lowry argued:

> Since beginning in the doctoral program in fall 2002, Mr. Herzog has demonstrated a persistent pattern of being unable to appreciate the impact of his behavior on others and lack of awareness of power differentials.
> * * *
> Given this continued pattern of deeply concerning behavior across his time at Loyola, which culminated in the most recent event at MSU (despite multiple significant interventions and remediation attempts while at Loyola, on externship, and now on internship), the PAR [Professional Assessment Review] Committee and faculty agree that it would be imprudent of Loyola to graduate Mr. Herzog and endorse his entering the profession of Psychology. [Emphasis supplied.]

22.  After receiving and reviewing Dr. Lowry's February 28th memorandum, the College's Graduate Academic Standards Committee formally met with Herzog, declined to reinstate him to the program, and Herzog's dismissal became final.

**Basis of Dismissal:**
**Arbitrary, Capricious, and/or Pretextual**

23.   Dr. Lowry's representations to the Graduate Academic Standards Committee, as set forth above in part –particularly with regard to her assertion that Herzog's conduct, prior to Dr. Lating's November 29, 2005 recommendation letter, constituted a "continued pattern of deeply concerning behavior across his time at Loyola"– were contrary to and inconsistent with the representations earlier made by Dr. Lating to Montana State.

24.   Indeed, given that, as of November of 2005, according to Dr. Lating, Herzog's record at the College reflected that he had "performed well", had the College's "highest recommendation", had "demonstrate[d] the capacity to participate in supervision constructively and ... modify ... [his] behavior in response to feedback", and no complaints were pending or filed against him in the past and found to be legitimate,  Herzog had not in fact demonstrated a continued pattern of deeply concerning behavior across his time at Loyola.

25.   Rather than a persistent pattern of deeply concerning behavior clearly professionally relevant to Herzog's doctoral program, Herzog had a record at the College which reflected overall excellence marked with a few isolated incidents apparently attributable either to Herzog's acknowledged disability as explained above,  and/or a perceived lack of reverence toward several faculty members.

26.   Despite its obvious relevance to the proceeding, the appeals panel of the Graduate Academic Standards Committee was not provided a copy of Dr. Lating's strong positive November 2005 recommendation, which would have permitted the panel to validly assess Herzog's progress at the College in context as it was perceived and recorded in real time, rather than retrospectively written in an effort to buttress a desire to expel Herzog.

27. Accordingly, the college's action in dismissing Herzog was arbitrary and capricious, at a minimum, or malicious and in bad faith, and therefore pretextural, at worst. At the same time, his dismissal violated the basic understanding between Herzog and the College that he would be allowed to matriculate unless and until he received his degree or otherwise acted in a manner inconsistent with the College's published academic and other guidelines and policies, neither of which occurred here.

## COUNT I
## Americans with Disabilities Act of 1990

28. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, in part, prohibits discrimination, on the basis of disability, in public accommodations and services provided by private entities such as the College.

29. Specifically, the act prohibits, in 42 U.S.C. §§12182(b)(2)(A)(i) & (ii), the imposition or application of eligibility criteria that tend to screen out an individual with a disability from fully and equally enjoying goods, services, facilities, privileges, advantages, or accommodations, unless necessary, and also prohibits the failure to make reasonable modifications in policies, practices or procedures where necessary to avoid discrimination against persons with disabilities.

30. The College violated 42 U.S.C. §§12182(b)(2)(A)(i) & (ii), and unlawfully discriminated against Herzog, who is a person with a covered disability, when it dismissed him from the program, and included behavior, events and conduct related to his disability, in the array of criteria on which it based its dismissal decision.

31. The College's discrimination against Herzog, as set forth the above paragraph, caused him substantial harm, injury and damage, and continues and will continue to do so in the future.

-10-

Maxwell & Barke
51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

## COUNT II
## §504 of Rehabilitation Act of 1973

32.   Section 504 of the Rehabilitation Act of 1973,  29 U.S.C. §701, *et seq.*, guarantees certain rights to persons with disabilities in connection with programs and activities receiving federal assistance, such as the College.

33.   Specifically, the act provides in 29 U.S.C. §794  that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

34.   The College violated 29 U.S.C. §794, and unlawfully discriminated against Herzog, who is a person with a covered disability, when it dismissed him from the program and included behavior, events and conduct related to his disability, in the array of criteria on which it based its dismissal decision.

35.   The College's discrimination against Herzog, as set forth in the paragraph above, caused him substantial harm, injury and damage, and continues and will continue to do so in the future.

## COUNT III
## Breach of Contract

36.   As a consequence of Herzog's admission to and matriculation at the College, as set forth above,  Herzog and the College had a contractual relationship which required the College to confer upon Herzog a doctoral degree in psychology, provided Herzog complied with the terms and conditions prescribed by the College in the program leading to that degree.



51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-11-

37.   The terms of the contract between Herzog and the College were set forth in various brochures, course offering bulletins, and other official statements, policies and publications, including website pages, created, published, and otherwise disseminated by the College, insofar as the same apply to the department and program in question, and the College was contractually obligated to conduct itself and its relationship with Herzog in a manner consistent with the terms of this contract.

38.   The College failed to honor its contract with Herzog by, *inter alia*, either failing at the outset of Herzog's internship to appropriately inform Montana State of the College's then true concerns regarding Herzog's progress thus far in the program, and his ongoing need for suitable supervision and remediation tailored to Herzog's academic and professional needs, or, more recently, in the dismissal process, intentionally and disingenuously taking the position that such concerns were ever-present and deepening since Herzog's entry into the program in 2002.

39.   In any event, through the date of his dismissal by the College, Herzog had substantially complied with all of material terms and conditions imposed upon him under the parties' contract, and he was, therefore, at the time of his dismissal, entitled to continue matriculating at the College and receive his doctoral degree upon satisfactory completion of his clinical internship and dissertation requirements.

40.   Accordingly, in unilaterally dismissing Herzog prior to graduation, the College acted arbitrarily and capriciously, in bad faith, and/or maliciously, and in breach of the parties' contract.

41.   The College's actions, as set forth above, have caused Herzog to suffer harm, injury and damage, and will continue to do so in the future.

WHEREFORE, Herzog demands judgment against the College, as follows:

A.    A mandatory injunction, requiring the College to re-admit Herzog to the College's doctoral program in psychology;

B.    An award of actual damages in such amount as will fully compensate Herzog for the injuries and harm he has and will suffer as a consequence of the College's improper conduct;

C.    An allowance of attorneys' fees, suit moneys and court costs, associated with Herzog's enforcement of his rights;

D.    Such other and further relief as the Court deems warranted under the circumstances.

### Jury Demand

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Joel R. Zuckerman, MD Fed. Bar No. 12730
James S. Maxwell,  MD Fed. Bar No. 04195
Maxwell & Barke LLC
51 Monroe Place, Suite 806
Rockville, Maryland 20850
Telephone: (301)309-8300
Facsimile: (301)309-8303
email@maxlaw.us

**Maxwell & Barke**
51 Monroe Place
Suite 806
Rockville, MD 20850
301.309.8300

-13-