IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| TIMOTHY HERZOG | * | | |
| Plaintiff, | * | | |
| v. | * | Civil Action No.: RDB-07-02416 | |
| LOYOLA COLLEGE IN MARYLAND, INC., | * | | |
| | * | | |
| Defendant. | * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Timothy Herzog ("Herzog" or "Plaintiff") alleges Defendant Loyola College in Maryland, Inc.[1] ("Loyola" or "Defendant") dismissed him from its graduate school because of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq*. Plaintiff also alleges that Loyola's dismissal constitutes a breach of contract based upon Herzog's admission and matriculation at the college. Currently pending before this Court is Loyola's Motion for Summary Judgment (Paper No. 38) as to Counts I and III, the remaining claims in this case.[2] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED as to both Counts I and III.

## BACKGROUND

---

[1] Loyola College in Maryland changed its name to Loyola University Maryland on August 19, 2009.
[2] By previous Memorandum and Order (Paper No. 15) this Court granted Loyola's Motion to Dismiss as to Count II.

1

In 1998, Plaintiff Timothy Herzog received an undergraduate degree from St. Mary's College of Maryland. (Herzog Dep. 72-73.) In 2001, Herzog obtained a masters in education counseling from Boston University, graduating with a 3.89 GPA. (*Id*. at 75, 78.) In the fall of 2002, Herzog began a master's program in clinical psychology at Defendant Loyola College in Maryland, Inc. (Compl. ¶¶ 6, 7.) When Herzog began his studies at Loyola, he received a written statement distributed to Loyola's student body stating that it was the "policy and practice of Loyola to comply with the [ADA], Section 504 of the Rehabilitation Act . . . , and state and local requirements regarding students with disabilities." (*Id.* ¶ 9.)

During his first year at Loyola, Herzog received an above average GPA while participating in various extracurricular activities, including coaching Loyola's sailing team. (Def.'s Mem. Supp. Summ. J. Ex. 3.) However, after the completion of his first semester, Herzog felt he was having difficulty focusing and sought out psychiatrist Glenn Byrnes. *Id.* Dr. Byrnes diagnosed Herzog with Attention Deficit Hyperactivity Disorder ("ADHD"), predominantly inattentive type, "[m]eaning that, for the most part, the individual is having trouble sustaining attention." (Herzog Dep. 86; Holloway Dep. 50-51.) Herzog had never previously sought diagnosis or treatment for ADHD. (Herzog Dep. 85.) Dr. Byrnes prescribed Herzog medications to manage the effects of his ADHD, which Herzog immediately began taking. (Byrnes Dep. 31, 35; Herzog Dep. 91.) After that point, Herzog consistently reported to Dr. Byrnes that his ADHD symptoms were alleviated by taking these medications and by implementing improved study habits. (Def.'s Mem. Supp. Summ. J. Ex. 3; Byrnes Dep. 34-42.) Herzog has stated that while at Loyola he lowered his dosage or did not take any medication on weekends or when he had fewer demands on his time. (Herzog Dep. 92.)

In the summer of 2003, Herzog asked Dr. Byrnes to recommend to Loyola's Disability Support Services Committee ("Support Services") that Herzog, because of his ADHD, receive extra time to complete two upcoming written comprehensive exams.  (Byrnes Dep. 8.)  Dr. Byrnes complied with Herzog's request.  (*Id.*)  Herzog subsequently submitted an application for accommodation and Dr. Byrnes' recommendation letter to Support Services.  In August 2003, Support Services approved his application, determining that Herzog had a disability.  Support Services identified Herzog's disability as "ADHD predominantly inattentive type DSM IV 314.00," which impaired his learning and test taking abilities.  (Compl. ¶ 10.)  Support Services never independently evaluated Herzog for ADHD or other learning disabilities.  (Def.'s Mem. Supp. Summ. J. Ex. 7, pp. 80-81, Ex. 13; Herzog Dep. 108-09.)  Herzog never requested any other accommodation for his ADHD.  (Herzog Dep. 114.)

In 2004, Herzog received a master's degree in clinical psychology from Loyola with a 3.48 GPA and enrolled in the school's doctorate program in the same field.  (Def.'s Mem. Supp. Summ. J. Ex. 11.)  Herzog earned superior grades throughout the remainder of his time at Loyola, although members of the faculty reported that he exhibited a pattern of "a lack of awareness of [his] impact on others" and was unable to recognize "power differentials."  (Def.'s Mem. Supp. Summ. J. Ex. 11; Herzog Dep. 166.)  Faculty members were also concerned about "the disparity between Herzog's perception of his actions and the perception of others."  (Herzog Dep. at 134; Lating Dep. at 11.)

In order to receive his doctorate degree, Herzog was required to complete an internship.  (Compl. ¶ 8.)  Herzog applied for and was admitted to the internship program at Montana State University ("Montana State").  (*Id.* ¶¶ 8, 15.)  Herzog's supervisor at Loyola, Dr. Jeffrey Lating, wrote a letter to Montana State on Herzog's behalf that stated as follows:

> I am writing to recommend most highly Mr. Timothy Herzog . . . . [H]e clearly possesses the requisite clinical skills predictive of internship success. [Herzog] has performed well in a very rigorous program of study . . . .  Overall, [Herzog] has been an asset to our doctoral program, and will do exceptionally well during his internship year.  I give [Herzog] my highest recommendation.

(*Id.* ¶ 12.)  Additionally, Dr. Lating completed a Montana State questionnaire in which he responded "No" to a question asking whether any complaints were currently pending against Herzog or whether any were filed in the past and found to be legitimate.  (*Id.* ¶ 13.)  Dr. Lating also answered "Yes" to a question asking whether Herzog "demonstrate[d] the capacity to participate in supervision and [to] modify his/her behavior in response to feedback."  (*Id.*).

In the fall of 2006, during the final year of his doctoral program, Herzog began the full-time internship at Montana State.  (Def.'s Mem. Supp. Summ. J. Ex. 7, p. 71, 77.)  Herzog submitted a New Employee Information Form at the beginning of this internship expressly certifying that he was not disabled.  (Def.'s Mem. Supp. Summ. J. Ex. 17; Herzog Dep. 199-200.)  One of Herzog's stated goals during this internship was to "explore power differentials and how hierarchical relationships can influence interpersonal dynamics." (Herzog Dep. 179.) In the course of this internship Herzog served as a graduate teaching assistant for a counseling skills course.  (Def.'s Mem. Supp. Summ. J. Ex. 7, p. 59.)  At some point during Herzog's first semester he asked a student in this class out for drinks.  (*Id.*)  On November 27, 2006, the student complained about Herzog's actions to the professor of the course, explaining that she felt scared to attend the class as a result.  (*Id.*)  When the professor subsequently approached Herzog about this incident, he admitted that he pursued the student, that doing so was improper and acknowledged that his actions constituted an ethical violation.  (*Id.* at 61, 64.)

On January 3, 2007, Dr. Lating received a letter from Dr. Betty Asserson ("Dr. Asserson"), Montana State's Assistant Director of Training, reporting on Herzog's progress through the internship program.  (Compl. ¶ 16.)  After two pages of generally complimentary reviews, Dr. Asserson described the details of this incident and expressed concern over Herzog's behavior.  (*Id.* ¶ 16.)  This was the first notice Loyola received of the episode.  (Herzog Dep. 226-27, 233.)  Dr. Asserson reiterated that a larger theme relating to this problem was Herzog's issue with "power in relationships."  (Def.'s Mem. Supp. Summ. J. Ex. 19, p. 3.)  Dr. Asserson instituted a remedial program that sought to address "ethics, power dynamics in relationships, and his defensiveness."  (*Id.*)  Herzog acknowledged this remediation plan and understood that failure to improve in these areas would result in unsuccessful completion of the internship program.  (*Id.*)

The Loyola Student Handbook for students in the clinical psychology program and the Loyola Graduate Program Handbook set forth specific ethical standards and professional requirements, which students are responsible for knowing and heeding.  (Def.'s Mem. Supp. Summ. J. Ex. 8.)  Notably, the Student Handbook specifically states that, "[t]he ethical and professional conduct of doctoral students includes refraining from any arrangements with undergraduate or other graduate students that could constitute a dual relationship, such as having a personal relationship with a student for whom one is also a teaching assistant."  (*Id.*, ¶ 3.)  The Graduate Program Handbook also advises that students must conform to Loyola's Policy on Consensual Relationships, which forbids consensual romantic and/or sexual relationships between graduate assistants and undergraduate students at any time.  (Def.'s Mem. Supp. Summ. J. Ex. 10, ¶¶ 4, 5.)  A violation of this policy is "considered a breach of professional ethics" and

may result in adverse action against the violating party, including dismissal from the program. (*Id.* ¶ 7.)

Upon receipt of Dr. Asserson's letter, Dr. Lating brought the issues with Herzog to the attention of Loyola's Professional Assessment Review Committee ("the Review Committee"). (*Id.* ¶ 18.)  After reviewing Herzog's alleged actions, the Review Committee determined that Herzog should be permanently dismissed from the clinical psychology doctorate program.  (*Id.* ¶ 17.)  The Review Committee informed Herzog of the decision via letter on February 13, 2007, which stated as follows:

> [T]his incident [at Montana State] was considered in the context of your entire training experience at Loyola.  While we appreciate the remediation steps that the supervisors at Montana State and you have taken, we remain deeply concerned about the repeated patterns of behavior, including your inability to recognize and react accordingly to power differentials, and your subsequent decisions based upon those behaviors.

(*Id.* ¶ 18; Ex. C.)  Pursuant to policy, Loyola's faculty conducted a vote and decided to uphold the dismissal of Herzog from the clinical psychology doctorate program, which was conveyed to Herzog in a letter dated February 20, 2007.  (*Id.* ¶ 19.)  Members of the Review Committee stated that their decisions were not based upon Herzog's ADHD but instead due to his violations of Loyola's ethical and school policies.  (Def.'s Mem. Supp. Summ. J. at 24-25.)

Herzog appealed the decision to Loyola's Graduate Academic Standards Committee ("Standards Committee").  (Compl. ¶ 19.)  Dr. Jen Lowry, Chair of Loyola's Department of Psychology, wrote a memorandum to the panel to explain the reasons for Herzog's dismissal. (*Id*. ¶¶ 20-21.)  Dr. Lowry stated that "[s]ince beginning in the doctoral program in fall 2002, Mr. Herzog had demonstrated a persistent pattern of being unable to appreciate the impact of his

behavior on others and lack of awareness of power differentials." (*Id*. ¶ 21.) Upon review of Dr. Lowry's memorandum and after meeting with Herzog, the Standards Committee upheld Herzog's dismissal from the program. (*Id*. ¶ 22.)

After his dismissal, Herzog found work in the psychology field and applied with the State of Montana to take an examination that would allow him to receive a license as a clinical professional counselor. (Def.'s Mem. Supp. Summ. J. Ex. 26.) In this application, which Herzog completed under oath, he answered "no" to the questions "do you have any physical or mental impairment(s) requiring special accommodation(s)?" and do you have "any physical or mental condition which has in the past three years adversely affected your ability to practice this profession?" (*Id*.) Herzog also sat for and passed a timed written exam to obtain this license without requesting any disability accommodations. (Herzog Dep. 284-85.)

## PROCEDURAL HISTORY

Plaintiff Herzog originally filed this Complaint on September 12, 2007. On October 4, 2007, Defendant Loyola filed a Motion to Dismiss (Paper No. 4) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court granted the Motion to Dismiss on March 7, 2007 (Paper No. 15) as to Count II, Herzog's disability discrimination claim under the Rehabilitation Act. The remaining claims are Herzog's disability discrimination claim under the ADA in Count I and Herzog's breach of contract claim in Count III. The parties conducted discovery on those claims. Loyola filed the subject Motion for Summary Judgment (Paper No. 38) on April 27, 2009.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a

"party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

The questions presented are whether: 1) Herzog is disabled under Title III of the ADA, and 2) Loyola's dismissal of Herzog resulted in a breach of contract.

**I. Disability Discrimination Claim**

In its motion, Defendant Loyola College argues that summary judgment should be granted because Plaintiff Herzog is not disabled under the ADA, was not "otherwise qualified" for the doctoral program, was not dismissed because of his alleged disability and because Loyola had a legitimate, non-discriminatory reason for his dismissal that was not a pretext for discrimination.  Title III of the ADA guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), which includes all "postgraduate private schools, or other places of education," 42 U.S.C. § 12181(7)(J).  Before January 1, 2009, the ADA defined a disability as: "(A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). [3]  This Court finds that summary judgment should be granted because Herzog has not proven he is disabled under the ADA.

---

[3] The ADA Amendments Act of 2008 ("ADAAA"), became effective on January 1, 2009.  The ADAAA makes important changes to the definition of the term "disability" by rejecting the holdings in several Supreme Court decisions and portions of Equal Employment Opportunity Commission's ("EEOC") ADA regulations.  However, Congress did not specify whether or not the ADAAA is to apply retroactively. In *Landgraf v. USI Film Products*, 511 U.S. 244, 280,

## A. Substantial Limitation

Herzog contends that his ADHD constitutes a disability within the meaning of the ADA. (Pl.'s Opp'n 9.) Accordingly, he must show "(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 254 (4th Cir. 2006). Herzog claims he has ADHD, a mental impairment, which limits the major life activity of "learning/test taking." (Compl. ¶ 10.) Because this is a Motion for Summary Judgment, this Court will view the facts in the light most favorable to the plaintiff, as non-moving party, and proceed assuming that Herzog does suffer from ADHD. Herzog relies upon the life activity of learning, a major life activity under the ADA, to demonstrate impairment.[4] *See* 29 C.F.R. § 1630.2(i) (defining major life activities to include learning). This Court will therefore continue to the third step and consider if Herzog's ability to learn was "substantially limited" by his ADHD.

---

114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994), the Supreme Court declared that there is a "well-settled presumption" against giving retroactive effect to any law that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 277, 280. Following this guideline, a number of jurisdictions have declined to apply the ADAAA retroactively, viewing the statute as altering parties' duties and liabilities under the prior version of the ADA. *See E.E.O.C. v. Argo Distribution, L.L.C.*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Barnes v. GE Sec., Inc.*, 2009 U.S. App. LEXIS 13129, 2009 WL 1974770, at *1 (9th Cir. June 18, 2009) (slip opinion); *Fikes v. Wal-Mart, Inc.*, 2009 U.S. App. LEXIS 7669, 2009 WL 961774, at *1 n.1 (11th Cir. Apr. 10, 2009) (slip opinion). Though the Fourth Circuit has not spoken on the matter, this Court adopts the approach taken by the aforementioned circuit courts, declining to apply the ADAAA to events occurring before its effective date.

[4] While learning is a major life activity, test-taking is not. *See Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1104 (D.C. Cir. 2007). However, Herzog's test-taking difficulties may still play a role in the individualized assessment of whether his limitation in the major life activity of learning is substantial as required by *Toyota Motor Mfg., KY, Inc. v. Williams*, 224 F.3d 840 (6th Cir. 2002). *Id.*

To be substantially limited, the E.E.O.C. has held that the employee must be either "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* § 1630.2(j)(1). The determination of whether an individual is disabled is an individualized inquiry, particular to the facts of each case. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

Although Herzog claims that he is impaired in the major life activity of learning, there is no evidence that his ability to learn is substantially limited as compared to the average person. This case is similar to *Palotai v. Univ. of Md.*, 38 Fed. Appx. 946 (4th Cir. 2002), where the United States Court of Appeals for the Fourth Circuit found that a psychologist's report stating that the plaintiff was "learning disabled" did not prove that the plaintiff had a significant limitation on his ability to learn under the ADA since he had a demonstrated record of academic achievement. *Id.* at 955. In *Palotai*, the Fourth Circuit explained that:

> To the extent that Palotai claims that his learning disabilities substantially limit the major life activity of learning, Palotai must show that his impairment significantly restricts his ability to learn. In evaluating this claim, we must consider whether Palotai is unable to learn in comparison to the average person in the general population.

*Id*; *see also Bercovitch v. Baldwin Sch.,* 133 F.3d 141, 155 (1st Cir. 1998) (holding that a student's learning abilities were not substantially impaired under the ADA where the student's ADHD affected his capacity to "achieve his absolute maximum learning and working potential" but the student never experienced significant academic difficulties and excelled academically for most of his life). Like the plaintiff in *Palotai*, Herzog's academic successes demonstrate his

11

ability to perform at an above-average level both before and after being diagnosed with ADHD in 2002. As Loyola College explains in excessive detail, Herzog attained an undergraduate degree with a double-major and received above-average grades while obtaining two master's degrees without any accommodations and before he learned he had ADHD. (Compl. ¶7; Def.'s Mem. Supp. Summ. J. Ex. 6, 11.) After Herzog learned he had ADHD, he continued to receive above-average grades in his doctorate classes at Loyola, and the only accommodation Herzog requested was additional time to complete two written comprehensive exams. (Def.'s Mem. Supp. Summ. J. Ex. 13.)

In addition, Herzog's learning impairment was mitigated by medication and improving his study habits. The mitigating effects of medication and related measures must be taken into account when determining whether an impairment is substantially limiting. *Sutton* at 482. Herzog admits that after he began taking medications for his ADHD he admitted he was able to learn, prioritize, stay on task and focus better. (Def.'s Mem. Supp. Summ. J. 32-33.) Tellingly, Herzog lowered his medication dosage and even stopped using this medication when he felt there were "fewer demands" on him. (*Id*.) Herzog also concedes that he was able to be more focused by using a library carrel, where he could study with fewer distractions, and by getting more exercise. (*Id*.)

Finally, Herzog's argument is undercut by his own admissions that he is not disabled. On August 24, 2006, Herzog checked "no" in response to a question on Montana State's New Employee Information Form that asked whether he was disabled. (Def.'s Mem. Supp. Summ. J. Ex. 17.) On his May 29, 2007 State of Montana licensing board application Herzog similarly acknowledged that he did not have any impairment requiring special accommodations or that

12

adversely affected his ability as a psychological counselor.  (Def.'s Mem. Supp. Summ. J. Ex. 26.)

Under the heightened standard of the former version of the ADA, Herzog has not presented evidence that he is "substantially limited" in the major life activity of learning, and has therefore failed to meet his burden of showing that he is disabled within the meaning of the statute.  For these reasons, even viewing the facts in the light most favorable to the plaintiff, Herzog has failed to demonstrate that ADHD substantially limits his ability to learn.

### B. Record Of Disability

Herzog contends that he "has a clear-cut record of having ADHD."  (Pl.'s Opp'n 9.)  Accordingly, he must show that he "'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Foore v. Richmond,* 6 Fed. Appx. 148, 153 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)); *see also, e.g., Swindell v. England,* 2006 U.S. Dist. LEXIS 96612, *21-23 (D. N.C. 2006); *Thompson v. Catenary Coal Co.,* 2003 U.S. Dist. LEXIS 20304, *18-19 (D. W. Va. 2003).  The record of disability standard is satisfied only if Herzog actually suffered a physical or mental impairment that substantially limited a major life activity.  *Parker v. Montgomery County Sch.,* 1999 U.S. Dist. LEXIS 22210, *48-51 (D. Md. 1999) (internal citation omitted).

Herzog has not provided sufficient evidence that he has a record of disability.  Although Dr. Byrnes found Herzog had ADHD in 2002, this Court has already found Herzog's learning impairments do not constitute a disability under the ADA.  (Herzog Dep. 113.)  Herzog's mere receipt of medical treatment is not sufficient to create a record of impairment under the ADA without a showing that the condition for which he was treated substantially limits a major life activity.  *Tice v. Ctr. Area Transp. Auth.,* 247 F.3d 506, 513 (3d Cir. 2001) ("A plaintiff

13

attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA.").  Furthermore, there is no evidence Herzog has otherwise been evaluated for a specific learning disability.  Thus, this Court finds that there is no genuine issue of material fact that Herzog has a record of disability under the ADA.

### C. Regarded As Disabled By Decision-Makers

Finally, Herzog contends he "was certainly regarded by Loyola as having ADHD." (Pl.'s Opp'n 9.)  Consequently, he must show that Loyola faculty members mistakenly believed that (1) he had a physical or mental impairment that substantially limits one or more major life activities, or (2) an actual, nonlimiting impairment substantially limits one or more of Herzog's major life activities. *Sutton v. United Air Lines,* 527 U.S. 471, 489 (U.S. 1999).

Herzog has not provided sufficient evidence showing that Loyola regarded him as disabled.  Loyola argues that none of the faculty members who made the decision to dismiss Herzog considered him to be disabled.  (Def's Reply 10-11.)  In response, Herzog merely contends that Dr. Lating and Dr. Lowry were *aware* of his ADHD.  (Pl.'s Opp'n 10.)  The mere fact that Dr. Lating and Dr. Lowry were aware of Herzog's ADHD is insufficient to demonstrate either that they regarded him as disabled or that their perception caused Loyola to dismiss him from the program. *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996); *see also Runnebaum v. Nationsbank of Maryland, N.A.*, 123 F.3d 156, 174 (4th Cir. 1997), *overruled on other grounds*, *Bragdon v. Abbott*, 524 U.S. 624 (1998) (concluding that mere knowledge of HIV status, without evidence that employer regarded HIV infection to be an impairment that substantially limited a major life activity, was insufficient to prove plaintiff was regarded as disabled).

Though Herzog comes closer to alleging that individuals at Loyola's Support Services office regarded him as disabled, this argument is unpersuasive since he does not show that the members of this office played any role in the decision to dismiss him from the doctorate program. *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 276 (4th Cir. 1995) (holding that in discrimination context, perceptions of nondecisionmakers are of low probative value); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) ("It is the perception of the decision maker which is relevant."); *cf. Kelly*, 94 F.3d at 109 (focusing on "the reactions and perceptions of the persons interacting or working with" the plaintiff). Because Herzog has shown nothing more than that some faculty members who voted to dismiss him were aware of his ADHD, this Court finds that Herzog was not regarded as disabled under the ADA.

### D. Legitimate, Non-Discriminatory Rationale

Even if Herzog could establish a prima facie case of disability discrimination under the ADA, Herzog's claim fails because Loyola has presented evidence sufficient to establish it had a legitimate, non-discriminatory reason for dismissing him. As has been explained above, universities are given wide discretion to make academic determinations. *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Loyola asserts that it dismissed Herzog because of his behavioral issues during the doctorate program and his breach of ethical standards while at Montana State. (Def.'s Mem. Supp. Summ. J. Ex. 7, p. 76.) Members of Loyola's psychology faculty have confirmed that these violations were serious enough to necessitate Herzog's dismissal and that this action had nothing to do with his learning impairment. (Def.'s Mem. Supp. Summ. J. 24-25.) It is well within Loyola's discretion to dismiss a student who has problems with authority, difficulty understanding the impact of his conduct on others and who has conceded to breaching ethical standards promulgated by the school.

Furthermore, Herzog has not demonstrated that there is a genuine issue of material fact that Loyola's reason for dismissing him was a pretext for discrimination because he has presented virtually no evidence establishing a link between his improper conduct and his learning impairment. *Onawola v. Johns Hopkins University*, 412 F. Supp. 2d 529, 533-34 (D. Md. 2006), *aff'd* 221 Fed. Appx. 211 (4th Cir. 2007) (dismissing doctoral student's claim against the university where the plaintiff did not establish a link between the alleged improper treatment and his protected status).  Herzog's only "proof" that he was dismissed because of his learning impairment is the language Loyola used in the dismissal letter stating that Herzog's actions at Montana State had been considered within the "context" of his conduct while at Loyola and related to the school's concern over his "repeated patterns of behavior."  (Compl. ¶18.)  Yet, Herzog has not demonstrated that Loyola's vague choice of words mean anything other than what they logically appear to – that Herzog's breach of ethics at Montana State and previous behavioral problems led to his dismissal.  Thus, even if Herzog could establish a prima facie case of discrimination, Herzog's disability claim still fails because Loyola has established a legitimate, non-discriminatory reason for dismissing him.

Even viewing the facts in the light most favorable to the plaintiff, this Court finds that Herzog has not presented sufficient evidence for a reasonable jury to conclude that he has a disability or that Loyola's reason for dismissing him was a pretext for discrimination. Accordingly, Plaintiff Herzog's claim under the ADA fails as a matter of law and Defendant Loyola is entitled to summary judgment as to Count I.

## II. Contract Claim

Herzog also alleges that Loyola's dismissing him from its doctorate program breaches the contract that was formed upon his admission and matriculation at the college.  Even assuming

*arguendo* that a contract can be established between Herzog and Loyola, Herzog's allegation that his dismissal resulted in a breach of contract is insufficient to create a genuine issue of material fact. In his Complaint, Herzog alleges that Loyola breached its contract with him in two respects. First, he claims Loyola failed to appropriately inform Montana State that he needed "suitable supervision and remediation" based upon his disability. (Compl. ¶ 36.) Since this Court has found that Herzog is not disabled under the ADA, Herzog's first contract claim fails as a matter of law.

Herzog's second basis for his contract claim is equally unsuccessful. Herzog alleges in the alternative that Loyola breached its contract when it dismissed him by "intentionally and disingenuously" claiming his behavior was a cause of concern for Loyola from the time Herzog entered its doctoral program. (Compl. ¶ 36.) However, as this Court explained in its Motion to Dismiss, it is within Loyola's authority to determine whether Herzog's admittedly unethical and unprofessional behavior warranted his dismissal from the program. (Paper No. 13.) Courts will not generally interfere in the operations of colleges and universities. *Onawola v. Johns Hopkins Univ.*, 412 F. Supp. 2d 529, 532 (D. Md. 2006) (citing *Harwood v. Johns Hopkins Univ.*, 130 Md. App. 476, 483 (Md. Ct. Spec. App. 2000); *see also Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1142 (4th Cir. 1990) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."). Furthermore, the record does not reflect evidence sufficient to demonstrate a genuine issue of material fact that Loyola dismissed Herzog for any reason other than his conduct during his internship at Montana State and previous misbehavior at Loyola.

Even viewing the facts in the light most favorable to the plaintiff, this Court finds that Herzog has not presented sufficient evidence for a reasonable jury to conclude that Loyola

breached a contract when it dismissed him. Accordingly, Plaintiff Herzog's contract claim fails as a matter of law and Defendant Loyola is entitled to summary judgment as to Count III.

For the reasons stated above, Loyola's Motion for Summary Judgment (Paper No. 13) is GRANTED as to Counts I and III.

A separate Order follows.

/s/

Dated: October 9, 2009  _____
Richard D. Bennett
United States District Judge